UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

BRANDON KELLAM,                 :
                                :
        Petitioner             :      No. 1:16-CV-00574
                                :
    vs.                         :      (Judge Kane)
                                :
CAPT. SPAULDING, WARDEN,        :
                                :
        Respondent              :

MEMORANDUM

Background

On April 5, 2016, Brandon Kellam, an inmate at the
Federal Correctional Institution at Allenwood, White Deer,
Pennsylvania ("FCI-Allenwood"), filed a petition for writ of
habeas corpus pursuant to 28 U.S.C. §2241, in which he named
Captain Spaulding, Warden, as the Respondent.

Kellam alleges that disciplinary sanctions were imposed
on him to include 60 days disciplinary segregation, 41 days loss
of good conduct time, 365 days loss of non-vested good conduct
time and 18 months loss of phone and visitation privileges.
Kellam requested that the sanctions imposed on him be modified in
an unspecified manner.

In his petition Kellam states that he appealed the
decision of the Discipline Hearing Officer ("DHO") to Warden
Spaulding but Warden Spaulding denied that appeal.  Kellam then
admits that he took no further appeals, but stated that

exhaustion of administrative remedies would be futile.  Kellam paid the $5.00 filing fee.

After reviewing Kellam's petition pursuant to Rule 4 of the Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254, as made applicable to § 2241 cases by Rule 1 thereof,[1] and finding that the petition was scant in detail,[2] the court on April 13, 2016, issued an order authorizing Kellam to file an amended petition within 30 days of the date of the order.  Furthermore, Kellam was advised to attach to the amended petition a copy of the incident/miscoduct report and the DHO's decision.

On May 9, 2016, Kellam filed an amended petition for writ of habeas corpus. (Doc. No. 4.)  For the reasons set forth below, the amended petition will be dismissed.

---

1.  Rule 4 states in pertinent part that "[t]he clerk must promptly forward the petition to a judge under the court's assignment procedure, and the judge must promptly examine it. If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition . . . ."

2.  The court stated as follows: "Kellam appears to be challenging the outcome of a prison disciplinary proceeding.[ ] However, Kellam does not specify the prison regulation he is alleged to have violated, the date a misconduct charge was filed against him, the date of the disciplinary hearing or the date of the disciplinary hearing officer's decision. {}  Furthermore, Kellam does not attach a copy of the misconduct/incident report or the decision of the disciplinary hearing officer to his petition. [ ] The most we can discern is that Kellam claims that his due process and equal protections rights were violated during the course of a prison disciplinary hearing held on an unspecified date because the sanctions imposed were excessive." (Doc. No. 3, at 2.)

**Discussion**

Kellam attached to his amended petition an incident report dated September 28, 2015, relating to drug testing he underwent on September 16, 2015. (<u>Id.</u> at 7.)  The incident report charged Kellam with a violation of Code 112, Use of Any Narcotics Not Prescribed By Medical Staff, a greatest severity level prohibited act, and under a section entitled "Description of Incident" states in toto as follows:

> On September 16, 2015,, at 0055, inmate Kellam, Brandon, reg. No. 61001-066, provided a urine sample with Specimen ID No. BOPOOO2612642 that showed an initial on-site positive result for THC.  A laboratory report received from Phamatech Laboratories on September 28, 2015, at 0800, shows that urine specimen No. BOPOOO2612642 was confirmed positive for Marijuana/ Marijuana Matabolite.  The institution hospital was contacted regarding inmate Kellam's medical records to verify if any medications were issued which would produce a positive test for this drug.  Medical staff indicated that inmate Kellam had not received any medication that would cause a positive result for Marijuana/Marijuana Metabolite.

(<u>Id.</u>)  On October 1, 2015, the Unit Discipline Committee ("UDC") referred the charge to the DHO for a hearing.

A hearing was held before the DHO on October 7, 2015, at which time Kellam was advised of his rights. (<u>Id.</u> at 8.)  Kellam waived his right to staff representation, requested no witnesses, presented no documentation, and admitted he was guilty of the charge. (<u>Id.</u>)  The DHO reviewed the documentation of the urine drugs test and based on that documentation and Kellam's admission found that he committed the prohibited act as charged. (<u>Id.</u> at 8-

3

9.)   The DHO then imposed the sanctions as stated earlier and in so doing stated in toto as follows:

> KELLAM's use of drugs potentially threatens both the orderly running of the facility and the safety of both staff and inmates.  Drug use is preceded by the illicit substance being introduced by breeching the secure perimeter of the institution.  The purchase of drugs tends to lead to debt and drug related debt has great potential to lead to violence in relation to payment/ non-payment of the same.  Inmates are the target for this violence and staff has great potential for injury responding to this violence.  Further, being under the influence of drugs limits inmate's ability to be involved in meaningful correctional programming. Accordingly, Disciplinary Segregation, the Disallowance of Good Conduct Time and the Forfeiture of Non Vested Good Conduct Time is sanctioned to punish KELLAM for his behavior, while the Loss of Privileges (Phone, Visit and No Contact Visit) is sanctioned in an effort to deter him from it in the future.  The DHO finds the charge for code 112 to warrant the Forfeiture of Non Vested Good Conduct Time in addition to Disallowance of Good Conduct Time based on the offense being of a highly aggravated offense which greatly jeopardizes the safety of staff and inmates.

(Id. at 10.)

In the amended petition, Kellam takes issue only with one of the sanctions imposed by the DHO. (Doc. No. 4, at 2.) Kellam claims that the sanction of forfeiture of 365 days of non-vested good conduct time[3] was "capricious, as well as, excessive and unreasonable." (Id. at 3.)  Kellam contends that seven other inmates who committed a Code 112 violation did not receive as

---

3.  Non-vested good conduct time is time which may reduce an inmate's sentence based on good behavior, but has not as yet been earned.  An inmate can reduce a sentence by up to 15 percent as a result of good behavior, i.e., by 54 days per year.  18 U.S.C. § 3624(b).

severe a forfeiture of non-vested good conduct time.  Kellam refers to the following cases where inmates received less than 365 days: (1) Wilfredo Pezez, 200 days; (2) Aaron Bellamy, 60 days; (3) Robert M. Salazar, 180 days; (4) Keith Manfredi, 80 days; (5) Brian Fernald, 150 days; (6) Keith Quagliarello, 27 days; and (7) Arthur Hairston, 80 days.  Kellam, however, admits that there was one inmate James V. Wallace, who received 458 days. (Id. at 3-4.) In challenging the forfeiture of 365 days non-vested good conduct time, Kellam merely relies on the above disparity in the amount of time forfeited and Kellam does not point to any other similarities between his circumstances and the circumstances of these other inmates which would suggest that the he was treated in a capricious or arbitrary manner. Kellam in a conclusory fashion states that the DHO's "implementation of sanctions for Code 112" was "capricious" and refers to the definition in Black's Law Dictionary of that term: "characterized by or guided by unpredictable or impulsive behavior; likely to change one's mind suddenly or behave in unexpected ways."  (Id. at 3.)

Liberty interests protected by the Fifth Amendment may arise either from the Due Process Clause itself or from statutory law.  Torres v. Fauver, 292 F.3d 141 (3d Cir.2002).  It is well-settled that "prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply."  Wolff v. McDonnell,418 U.S. 539, 556 (1974).  Nevertheless, the Supreme

Court found that there can be a liberty interest at stake in disciplinary proceedings in which an inmate loses good conduct time.  Id.  Since Kellam's sanctions did include the loss of good conduct time as well as non-vested good conduct time, Kellam has identified a liberty interest in this matter.

In Wolff, the Supreme Court set forth the following minimum procedural due process rights to be afforded to a prisoner accused of misconduct in prison which may result in the loss of good time credit: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the disciplinary charges; (3) an opportunity to call witnesses and present documentary evidence in his defense when it is consistent with institutional safety and correctional goals; (4) assistance from an inmate representative if the charged inmate is illiterate or complex issues are involved; and (5) a written decision by the fact finder of the evidence relied upon and the rationale behind the disciplinary action.  Wolff, 418 U.S. at 563-67.  The Supreme Court has held that the standard of review with regard to the sufficiency of the evidence is whether there is "any evidence in the record that could support the conclusion reached by the disciplinary board."  Superintendent v. Hill, 472 U.S. 445-46 (1985); see also Griffin v. Spratt, 969 F.2d 16, 19 (3d Cir.1992).  If there is "some evidence" to support the decision of the hearing examiner, the court must reject any evidentiary challenges by the plaintiff.  Hill, 472 U.S. at 457.

6

The Bureau of Prisons' inmate disciplinary procedures are codified at 28 C.F.R. § 541, et seq., and entitled, Inmate Discipline and Special Housing Units. These procedures are intended to meet or exceed the due process requirements prescribed by the Supreme Court. See Von Kahl v. Brennan, 855 F.Supp. 1413, 1418 (M.D.Pa.1994). Pursuant to these regulations, staff shall prepare an Incident Report when there is reasonable belief that a violation of BOP regulations has been committed by an inmate and the staff considers informal resolution of the incident inappropriate or unsuccessful. 28 C.F.R. § 541.5. The incident is then referred to the UDC for an initial review pursuant to § 541.7.

The UDC review/hearing is "ordinarily [held] within five work days after [the incident report] is issued" and does not include the initial day staff learns of the incident, weekends or holidays. Id. If the UDC finds that a prisoner has committed a prohibited act, it may impose any of the available sanctions set forth in 28 C.F.R. § 541.3 (Tables 1 and 2) except loss of good conduct time, disciplinary segregation, or monetary fine. Id. If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the greatest severity category, the UDC must refer the matter to a DHO for a hearing. Id.

A DHO "will only conduct a hearing on the incident report if referred by the UDC." 28 C.F.R. § 541.8. An inmate will

receive written notice of the charges 24 hours before the DHO hearing unless the inmate waives the notice requirement in which case the DHO can conduct the hearing sooner. <u>Id.</u>  The inmate is permitted to have a staff representative at the hearing and entitled to make a statement and present documentary evidence. <u>Id.</u> After the hearing the DHO will either (1) find the inmate committed the prohibited act or similar one described in the incident report; (2)find the inmate did not commit the prohibited act charged; or (3) refer the incident report back for further investigation, review and disposition. <u>Id.</u>  If an inmate is found to have committed a prohibited act, the DHO can impose any of the available sanctions listed in Table 1 and 2[4] of § 541.3. <u>Id.</u> Finally, the written report or decision of the DHO will contain the following:(1) whether the inmate was advised of his or her rights during the proceedings; (2) the evidence relied on by the DHO; (3) the DHO's finding of guilt or innocence; (4) the sanctions imposed; and (5) the reasons for the sanctions imposed. <u>Id.</u>

In the instant case it is clear that Kellam was afforded all of the required procedural rights set forth in <u>Wolff</u>.  He received timely notice of the incident report.  He was properly informed of his rights before the hearing, as well as given the opportunity to make his own statement, present documentary

_____

4.  Table 2 set forth sanctions for repeated prohibited acts within the same severity level.  The government has not claimed that Bergin committed prior prohibited acts.

evidence, have a staff representative, and to present witnesses on his behalf.  Kellam chose only to make a statement in which he admitted his guilt. Kellam also received a written decision setting forth the evidence relied upon by the DHO and the rationale behind the decision.  Kellam was then notified of his right to appeal.

Since Kellam was afforded all of his procedural rights, the only remaining issue is whether there was sufficient evidence to support the decision by the DHO, both with respect to the finding that Kellam committed the prohibited act and the sanctions imposed.  Before we address this issue we will review the regulations of the Bureau of Prisons relating to the prohibited act and manner in which the DHO must decide what sanctions to impose.

Prohibited acts under the regulations of the Bureau of Prisons are divided into four severity categories: Greatest (100 level), High (200 level), Moderate (300 level) and Low (400 level).  28 C.F.R. § 541.3.  As stated above the prohibited act alleged to have been committed by Kellam was Code 112, a greatest severity level prohibited act. The available punishments for such an act include the following: (1) recommend parole date rescission or retardation; (2) forfeit and/or withhold earned statutory good time or non-vested good conduct time (up to 100%) and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended); (3) disciplinary segregation

(up to 12 months); (4) monetary fine; (5) loss of privileges (e.g., visiting, telephone, commissary, movies, recreation); (6) impound inmate property; and (7) restrict to quarters. 28 C.F.R. § 541.3 (Table 1).  With respect to the manner in which sanctions are to be imposed, 28 C.F.R. § 541.1 authorizes the imposition of sanctions on inmates for violation of prison regulations and states in pertinent part that "[s]anctions will not be imposed in a capricious or retaliatory manner."

The record clearly reveals the existence of evidence, including Kellam's admission of guilt, submitted at the hearing to allow the DHO to conclude that the greater weight of the evidence supported a finding that Kellam violated Code 112. The DHO gave an explanation for the sanctions, including his judgment as to what was needed to deter Kellam from engaging in similar behavior in the future.[5] Furthermore, the sanctions imposed by the DHO were within the limits of 28 C.F.R. § 541.3 (Table 1).

The Court of Appeals for this circuit has stated that as long as the sanctions are authorized by the regulations and DHO gives an explanation for the sanctions, the decision of the DHO is not arbitrary. Garrett v. Smith, 180 F. App'x 379, 382 (3d Cir. May 12, 2006)("Both penalties are clearly explained in the DHO's report and are consistent with the regulations. Thus, the

---

5.  The judgment relating to what is needed to deter an inmate can be based on many factors, including the DHO's observations of the inmate's demeanor during the hearing.

sanctions were not arbitrary."); see also Millard v. Hufford, 415 F. App'x 348, 350 (3d Cir. Feb. 28, 2011)("Although the fifty-four day disallowance of good conduct time and 270-day forfeiture of non-vested good conduct time . . . was harsh punishment, it fell within the range of acceptable punishments outlined by the applicable regulations."). Furthermore, there are no allegations in the amended petition from which it can be concluded that the DHO imposed sanctions on Kellam in a capricious or retaliatory manner.

Kellam does not raise an equal protection claim. However, even if raised, such a claim would be unavailing. In Bolling v. Sharpe, 347 U.S. 497 (1954) the Supreme Court applied the Fourteenth Amendment's concepts of equal protection to the federal government through the Due Process Clause of the Fifth Amendment. The Fourteenth Amendment of the Constitution provides in pertinent part: "No State shall . . . deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." The Court of Appeals for the Third Circuit has observed that the equal protection clause "is not a command that all persons be treated alike but, rather, 'a direction that all persons similarly situated should be treated alike.'" Artway v. Attorney General, 81 F.3d 1235, 1267 (3d Cir. 1996)(quoting City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985)); see also Kuhar v. Greensburg-Salem Sch. Dist., 616 F.2d 676, 677

11

n.1 (3d Cir. 1980)("An equal protection claim arises when an individual contends that he or she is receiving different treatment from that received by other individuals similarly situated.").

It is well-settled that a litigant in order to establish a viable equal protection violation must show an intentional or purposeful discrimination. Snowden v. Hughes, 321 U.S. 1, 8 (1944); Wilson v. Schillinger, 761 F.2d 921, 929 (3d Cir. 1985), cert denied, 475 U.S. 1096 (1986); E & T Realty v. Strickland, 830 F.2d 1107, 1113-14 (11th Cir. 1987), cert. denied, 485 U.S. 961 (1988). This "state of mind" requirement applies equally to claims involving (1) discrimination on the basis of race, religion, gender, alienage or national origin, (2) the violation of fundamental rights and (3) classifications based on social or economic factors. See, e.g., Britton v. City of Erie, 933 F. Supp. 1261, 1266 (W.D. Pa. 1995), aff'd, 100 F.3d 946 (3d Cir. 1996); Adams v. McAllister, 798 F. Supp. 242, 245 (M.D. Pa.), aff'd, 972 F2d 1330 (3d Cir. 1992).[6]

Kellam has failed to allege facts from which it can be concluded that the DHO engaged in intentional or purposeful discrimination or that he was treated differently than similarly situated individuals on the basis of his race or some other impermissible reason. See Millard, 415 F. App'x at 349-350

---

6. However, when a statute, rule or regulation "discriminates on its face," there is no need to present any further evidence of intent.  See E & T Realty, 830 F.2d at 1112 n.5.

12

("[Petitioner] cited various cases in which inmates received less severe punishments for the same violation committed by [Petitioner] . . . arguing that because he received harsher punishment than other inmates for the same offense, the punishment must have been the result of discrimination. Beyond such an inference, however, [Petitioner] has put forward no evidence that his punishment was the result of purposeful discrimination.").

In contrast to the original petition, Kellam in the amended petition claims that he exhausted his administrative remedies. (Doc. No. 4, at 1-2.)  However, he attached to his amended petition a memorandum dated March 10, 2016, which was sent to him from the Central Office of the Bureau of Prisons and which indicates that the Central Office received his appeal on February 22, 2016, and that it was extending the time to respond to his appeal until April 22, 2016, as provided for in the administrative remedy program statement. (Id. at 12.)

The Bureau of Prisons has established an administrative remedy procedure, which is set forth at 28 C.F.R. § 542.10 et seq., whereby a federal prisoner may seek formal review of any aspect of his imprisonment.  Inmates must first informally present their complaints to staff, and staff shall attempt to informally resolve any issue before an inmate files a request for administrative relief. 28 C.F.R. § 542.13(a). If unsuccessful at informal resolution, the inmate may raise his complaint with the warden of the institution where he is confined. Id. at §

13

542.14(a). If dissatisfied with the response, the inmate may then appeal an adverse decision to the Regional Office and then to the Central Office of the Bureau of Prisons. Id. at §§ 542.15(a). However, the first two steps, informal resolution and appeal to the Warden, do not apply to appeals from decisions of a DHO. 28 C.F.R. § 542.14(d)(2).  The inmate is to appeal directly to the Regional Office. Id.  No administrative remedy appeal is considered to have been fully and finally exhausted until it has been denied by the Bureau of Prisons's Central Office.  Id. Furthermore, the fact that the Regional Office fails to respond to an appeal does not relieve an inmate of his responsibility to proceed to the final step, i.e., submitting an appeal to the Central Office of the Bureau of Prisons because an appeal to the Regional Office is deemed responded to and denied "[i]f the inmate does not receive a response within [30 calendar days of submission of the appeal]." 28 C.F.R. § 542.18.  Under those circumstances "the inmate may consider the absence of a response to be a denial at that level." Id.  Likewise, a failure of the Central Office to act within 40 calendar days is considered a denial. Id.  However, the Central Office as stated above may extend for a period of 20 days the time for it to decide the appeal and so notify the inmate. Id.  The petition in this case was filed by Kellam on April 5, 2016, prior to the deadline for the Central Office to respond to his appeal.

Consequently, because (1) the federal regulation authorizes the forfeiture of non-vested good conduct, (2) there is an absence of any allegations of purposeful discrimination, and (3) the petition was filed before a decision was due from the Central Office, Kellam's petition will be dismissed.

Finally, because Kellam is not detained because of process issued by a state court and the petition is not brought pursuant to 28 U.S.C. § 2255, no action by this court with respect to a certificate of appealability is necessary.

An appropriate order will be entered.